IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| MELVIN LEO WILSON, | ) | 8:17CV0188 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| DOUGLAS COUNTY CORRECTION, JUNIOR STEPHENS, CHIDEZ C.O., and 4 UNKNOWN NAMED OFFICERS, | ) | |
| Defendants. | ) | |

Plaintiff, Melvin Wilson, filed his Complaint (Filing No. 1) on June 6, 2017, and was subsequently granted leave to proceed in forma pauperis (Filing No. 9). The court now conducts an initial review of Wilson's Complaint and to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Wilson is confined at the Douglas County Corrections Center ("DCCC"). He claims to have been severely beaten on January 8, 2013, by six corrections officers. Wilson also claims to suffer from PTSD as a result of the incident and claims he has not received proper medical treatment. He further claims to be a victim of continuing harassment by corrections officers.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of

it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construing Wilson's complaint, he is suing Defendants under 42 U.S.C. § 1983. To state a claim under that section, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION OF CLAIMS

As an initial matter, the court notes that Douglas County Corrections Center is not a proper Defendant. *See Dan v. Douglas Cty. Dep't of Corr.*, No. 8:06CV714,

2009 WL 483837, at *4 (D. Neb. Feb. 25, 2009) (the Department of Corrections and other units within the DCCC and Douglas County lack the legal capacity to sue or be sued in their own names). The County would be a proper Defendant,[1] but it may only be liable under section 1983 if a "policy" or "custom" of the county caused a violation of the plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental "custom," a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

---

[1] In point of fact, Douglas County effectively is the only Defendant in this case because Wilson has not alleged that he is seeking to hold Junior Wilson, C.O. Chidez or the unknown officers personally liable. Where a plaintiff does not specify the capacity in which a defendant is sued, it is presumed that a defendant is sued in his official capacity only. *See, e.g., Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (stating that "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."). A claim against an individual in his official capacity is in reality a claim against the entity that employs the official. *See Parrish v. Luckie*, 963 F.2d 201, 203 n. 1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity."); *Eagle v. Morgan*, 88 F.3d 620, 629 n.5 (8th Cir. 1996) ("'[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Jane Doe, 901 F.2d at 646. Wilson's Complaint does not "contain 'allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of [Douglas County].'" Parsons v. McCann, 138 F. Supp. 3d 1086, 1099 (D. Neb. 2015) (quoting Doe ex rel. Doe v. School Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003)).

Secondly, the court finds that Wilson's claim regarding the alleged beating is barred by the statute of limitations. The Nebraska statute of limitations for personal injury actions, Neb. Rev. Stat. § 25-207, applies in this case, *see* Wilson v. Garcia, 53 U.S.L.W. 4481, 4485 (1985), and provides a 4-year limitations period for bringing suit. Thus, Wilson was required to file suit no later than Monday, January 9, 2017. Because Wilson did not file suit until nearly six months later, on June 6, 2017, this claim cannot be maintained.[2]

Wilson's claim that he has since suffered from PTSD does not avoid the bar of the statute of limitations, even if a diagnosis was not made until a later date.[3] *See* Bales v. Danielson, No. 2:15-CV-0162-TOR, 2016 WL 593594, at *2 (E.D. Wash. Feb. 12, 2016) ("The Court finds Plaintiff's claim accrued in May 2011, at the time of his assault, when he first knew or should have known of the injuries that formed the basis of his claims. Despite Plaintiff's argument to the contrary, his PTSD diagnosis does not call for a delayed accrual date."); Wallace v. Kato, 549 U.S. 384, 391 (2007). ("[T]he tort cause of action accrues, and the statute of limitations commences to run,

---

[2] Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint as frivolous when it is apparent that the statute of limitations has run. Myers v. Vogal, 960 F.2d 750, 751 (8th Cir. 1992).

[3] Wilson does not allege that he has been diagnosed with PSTD, however.

-4-

when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.").

Wilson alleges his PTSD symptoms manifested themselves October 2014 after he was arrested and placed back in DCCC. Wilson alleges he did not sleep for a week after being yelled at by a corrections officer on October 28, 2014, when a fight broke out in his cell block; Wilson was moved to the health watch unit, where he had suicidal thoughts and needed to be placed in restraints. Wilson alleges the PTSD symptoms returned during his next stay at DCCC, beginning on October 27, 2015. Wilson claims he reported to medical staff that he "had been awake for days on end," but was denied any treatment.

"To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs.[4] This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation and citation omitted).

"Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing

---

[4] A convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment, while a pretrial detainee's challenge to such conditions is analyzed under the Fourteenth Amendment's due process clause. "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Davis v. Oregon County*, 607 F.3d 543, 548 (8th Cir. 2010) (internal quotation and citation omitted).

or knowingly bringing about a substantial risk of serious harm to the inmate. An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate. Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision." *Id*. at 914-15 (internal quotations and citations omitted).

Wilson has not identified any DCCC official who was deliberately indifferent to his medical needs. While Wilson identifies two individuals to whom he reported his symptoms between October 28 and November 10, 2014, neither of them are named as defendants; in any event, Wilson does not allege he was denied treatment during that time period. No individual is identified regarding the alleged lack of medical treatment on and after October 27, 2015, nor are any facts alleged to show that a Douglas County policy or custom caused Wilson's rights to be violated.

Claiming harassment, Wilson first alleges that "C.O. Curtis locked me down for no violation of rules and I was sentenced to 26 days lockdown." Curtis is not named as a Defendant, however, and there is no indication the "lockdown" occurred because of a County policy or custom. The allegation does not state an Eighth Amendment claim in any event. *See Webb v. Hedrick*, 409 F. App'x 33, 35 n. 1 (8th Cir. 2010) ("The prohibition against cruel and unusual punishment is focused on the conditions of the administrative segregation, not on the reasons for placement there."). To the extent Wilson intends to claim he was denied due process by being placed in "lockdown," he will need to allege facts to support such a claim.[5]

---

[5] The determination of whether prison officials have denied an inmate due process related to detention in administrative segregation involves a two-step inquiry. The inmate must first demonstrate that he was deprived of life, liberty, or property by government action, and to prevail on such a claim based on prison housing, an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed. Having determined that a liberty interest does in fact exist, the court must next determine what process is necessary to protect that interest. *Williams v.*

Wilson next alleges that Junior Stephens came to his place of employment in October or November (of 2016?) and "mean mugged me and gave a head nod." While Wilson claims he was "paralyzed with fear" as a result of this encounter, there is no indication that Stephens was acting under color of state law at the time.

Finally, Wilson alleges that C.O. Thorton, who is not named as a Defendant, called him a "wanksta" on May 26, 2017, in an attempt to belittle Wilson in front of other inmates in a courtroom holding area. Insulting behavior such as this does not rise to the level of a constitutional violation. *See [McDowell v. Jones](), 990 F.2d 433, 434 (8th Cir. 1993)* ("Verbal threats and name calling usually are not actionable under [§ 1983]().").

## IV. CONCLUSION

Wilson's Complaint fails to state a claim upon which relief can be granted against any Defendant. On the court's own motion, however, Wilson will be given 30 days in which to file an Amended Complaint to state an actionable claim against Defendants. Plaintiff should clearly indicate whether each Defendant is sued in his or her individual or official capacity, or both. Defendant "Douglas County Correction" will be dismissed from the action because it is not a suable entity.

Wilson's motion for judgment (Filing No. [10]()) and request for an evidentiary hearing (Filing No. [11]()) will be denied without prejudice, and his praecipes for subpoenas (Filing Nos. 7, 12) and notice to take deposition (Filing No. [13]()) will be ordered stricken from the court file.[6]

---

*[Hobbs](), 662 F.3d 994, 1000 (8th Cir. 2011)*. The Eighth Circuit has consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship. *[Phillips v. Norris](), 320 F.3d 844, 847 (8th Cir. 2003)*.

[6] Unless and until Wilson states an actionable claim and the court authorizes service of process, there will be no discovery or hearings.

IT IS ORDERED:

1. All claims alleged against Defendant "Douglas County Correction" are dismissed without prejudice and it shall no longer be a party to this action.

2. Plaintiff's Motion for Judgment (Filing No. 10) is denied without prejudice.

3. Plaintiff's Motion for Evidentiary Hearing (Filing No. 11) is denied without prejudice.

4. Plaintiff's Praecipes for subpoenas (Filing Nos. 7, 12) shall be stricken from the court filed.

5. Plaintiff's Notice to Take Deposition (Filing No. 13) shall be stricken from the court file.

6. On the court's own motion, the court will give Plaintiff 30 days in which to file an Amended Complaint that states a claim on which relief may be granted against Defendants. Failure to file an Amended Complaint within 30 days will result in the court dismissing this case without further notice to Plaintiff.

7. The clerk of the court is directed to set the following pro se case management deadline: September 15, 2017: check for amended complaint.

DATED this 15th day of August, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge